IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CODY BOOTES, | ) | |
| | ) | Civil Action No. 1:22-cv-154 |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | JURY TRIAL DEMANDED |
| PPP FUTURE DEVELOPMENT, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

AND NOW, comes the Plaintiff, Cody Bootes, by and through his counsel Creenan & Baczkowski, PC, James W. Creenan, Esquire, Ian C. Walchesky, Esquire, and Joanne L. Parise, Esquire, and files his Complaint against Defendant PPP Future Development, Inc., as follows:

1.      Plaintiff Cody Bootes ("**Bootes**") is an adult individual residing at 9420 Donlin Road, Greenfield Township, Erie County, Pennsylvania ("**Property**").

2.      Defendant PPP Future Development, Inc. ("**PPP**") is a New York corporation with a principal place of business located as 9489 Alexander Road, Alexander, Genesee County, New York 14005.

3.      This Honorable Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), in that this is a civil action between a citizen of Pennsylvania and a citizen of New York, and the value of the declaratory relief sought by Bootes in this action exceeds $75,000.00.

4.      Venue is proper in this district under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in this district and the Property that is the subject of the action is situated in this district.

5.      This matter concerns PPP's breaches of its obligations under an oil and gas lease, its failure to maintain its equipment on the Property, and the validity of the lease itself.

A.  **The January 25, 1979 Lease Agreement**

6.      On January 25, 1979, the former owners of the Property Thomas Graczyk and Anastasia Graczyk as Lessor and Envirogas, Inc. as Lessee entered into a lease agreement ("**Lease**") wherein Thomas Graczyk and Anastasia Graczyk leased their rights to the oil and gas beneath the Property to Envirogas, Inc.  A true and correct copy of the Lease is attached as **Exhibit 1**.

7.      Bootes purchased the Property on May 19, 2020, and Bootes is the successor in interest to Thomas Graczyk and Anastasia Graczyk as Lessor under the Lease.

8.      Upon information and belief, PPP is the successor in interest to Envirogas, Inc. as Lessee under the Lease.

9.      Pursuant to the Lease, the Lessor granted to Lessee the "exclusive right to explore and operate for and produce oil and gas, lay and maintain pipelines, build tanks and roads, store gas, store oil, and build other structures thereon necessary to produce, save and sell all such substances." Ex. 1 at ¶ 1.

10.      Pursuant to the Lease, the Lessee under the Lease installed certain equipment and structures on the Property for Lessee to use in the search for and production of oil and gas including pipelines and two (2) wells.

11.      Pursuant to the Lease, PPP agreed to pay royalties to Bootes "for or on account of wells producing gas from subsurface strata not utilized for the storage of gas, namely: To pay a royalty equal to one eighth (1/8) of the value of all gas (except storage gas) produced, saved and marketed, calculated at the price paid at the connecting point by the pipeline operator." Ex. 1 at ¶ 4.

12.     Pursuant to the Lease,

> The royalty in money shall be ascertained, computed and paid
> monthly, and, for this purpose, Lessee shall keep true and correct
> books of account showing the production of said substances from
> said premises and these records shall be opened to inspection of
> Lessors at all reasonable times.  Lessee shall furnish to Lessor
> monthly written statements of the production of said premises for
> the preceding calendar month; settlement shall be made between the
> parties hereto, not later than the twentieth (20th) day of each
> calendar month following the month in which Lessee receives
> payment from the purchaser from the said oil and gas.

Ex. 1 at ¶ 18.

13.     Pursuant to the Lease, PPP agreed to provide to Bootes two hundred thousand
(200,000) cubic feet of gas per year from one (1) of the two (2) wells on the Property "free of cost
for his own domestic use."  Ex. 1 at ¶ 11.

14.     Since the time that the original parties to the Lease executed the Lease, the owner
of the Property (i.e., the Lessor) has used the gas supplied by the Lessee as the sole source of gas
to the structure on the Property.

15.     The Property does not have another source of gas.

16.     Pursuant to the Lease, PPP agreed to provide Bootes with the "cash equivalent of
Two Hundred Thousand (200,000) cubic feet of gas per year (primary period or anniversary
thereof)" due to the existence of the second well on the Property ("**Cash Equivalent Payment**").
Ex. 1 at ¶ 11.

17.     Pursuant to the Lease, PPP agreed to conduct its operations under the Lease "with
reasonable diligence, continuously, in good faith, with first class equipment and appliances, and
in accordance with the best customary practices in the field."  Ex. 1 at ¶ 15.

18.     Pursuant to the Lease, PPP agreed to prevent its operations under the Lease from:

> (a) causing or contributing to soil erosion or to the injury of terraces
> or other soil conserving structures on the premises; (b) polluting the

> waters of reservoirs, springs, streams or wells upon the leased premises; (c) damaging crops, timber or pastures, consistent with the purpose of this lease;

Ex. 1 at ¶ 8.

19.     Pursuant to the Lease, PPP agreed that it shall "pay to the person beneficially interested in the damaged object, all damages caused by its operations to the surface, growing crops, pasture and improvements on said land or to animals or livestock." Ex. 1 at ¶ 8.

20.     Pursuant to the Lease, PPP agreed to "comply with all governmental laws, orders, rules and regulations applicable to Lessee's operations hereunder." Ex. 1 at ¶ 15.

21.     Pursuant to the Lease, PPP agreed to "bury all pipelines below plow depth." Ex. 1 at ¶8.

22.     Pursuant to the Lease, the term of the Lease was one (1) year "and so long as thereafter the above described land, or any portion thereof, is operated by the Lessee in the search for or production of oil or gas, or as long as this lease is extended by any other provisions contained herein." Ex. 1 at ¶ 3.

23.     Pursuant to the Lease, when the Lessee determines that its operation of the wells under the Lease "is no longer commercially feasible, Lessor shall have the option of purchasing the well and pipeline for the sum of One ($1.00) Dollar, or having [Lessor] plug the well[s]." Ex. 1 at ¶ 13.

24.     Pursuant to the Lease, "if Lessee, pursuant to Paragraph 13 herein, turns over the casing, pipes, pipelines and valves shall be the property of Lessors." Ex. 1 at ¶ 22.

25.     Pursuant to the Lease, "At the abandonment of any well or termination of this lease, all casings shall remain in the well and become the property of Lessor." Ex. 1 at ¶ 8.

**B. PPP's Violation of the Lease**

26.     PPP has not paid any royalties to Bootes as required by the Lease.

27.     PPP has not furnished to Bootes any monthly written statements of the production of gas on the Property as required by the Lease.

28.     Upon information and belief, PPP has not kept records of the production of gas for the Property as required by the Lease.

29.     PPP has not opened its records of the production of gas for the Property to Bootes for inspection as required by the Lease.

30.     PPP has not provided Bootes with a supply of two hundred thousand (200,000) cubic feet of gas per year from one (1) of the two (2) wells on the Property.

31.     PPP has interrupted the supply of gas for months at a time.

32.     PPP has not provided Bootes with the Cash Equivalent Payment for the second well on the Property.

33.     PPP has failed to maintain its equipment.

34.     As a result of PPP's failure to maintain its equipment, the equipment has deteriorated and began to leak and cause damage to Bootes's Property.

35.     Upon information and belief, the systems have leaked and continue to leak wastewater and/or byproducts of production onto Bootes's Property.

36.     PPP disassembled one of the wells and shut down the supply of gas to Bootes's house, leaving him without gas in the winter of 2020-2021.

37.     On June 2, 2021, PPP entered onto Bootes's Property without notice to Bootes and began performing work on PPP's equipment.

38.     PPP bulldozed a driveway across Bootes's Property from the edge of the Property to one of the wells.

39.     PPP ultimately restored the supply of gas to Bootes's house, using the other well to supply gas to the residence.

40.     In October 2021, PPP partially cleaned up the debris from the driveway.

41.     In November 2021, Bootes notified PPP it was in breach of the lease for failing to make the cash equivalent payment of 200,000 cubic feet of gas for the second well.

42.     PPP replied that it did not believe it was required to make the payment under the lease because it was supplying Bootes with gas from the second well.

43.     In February 2022, PPP made another 800-yard driveway across Bootes's Property, leaving dirt and debris.

44.     During the process of installing a separation tank, PPP ran over an exposed brine line.

45.     Bootes requested PPP clean up the Property, and PPP refused.

46.     PPP has not restored Bootes's Property to its prior condition and piles of topsoil that PPP displaced to create the driveway to the well remain on Bootes's Property.

47.     PPP has left exposed brine lines on the Property, when all such equipment is required to be buried underground pursuant to the Lease.

48.     PPP refused to remove an inoperable brine line that PPP left laying on Bootes's Property.

49.     PPP has failed to comply with all governmental laws, orders, rules and regulations applicable to its operations under the Lease.

**C.  PPP's Violation of Pennsylvania Law**

50.     In September 2020, the Pennsylvania Department of Environmental Protection ("**DEP**") came to the Property and inspected PPP's oil and gas operations.  Copies of the Surface Activities Inspection Reports from the inspection performed by the DEP on September 29, 2020 and also on April 30, 2021 are collectively attached as **Exhibit 2**.

51.     Specifically, as set forth in the September 2020 DEP Inspection Reports attached as Exhibit 2, PPP has failed to comply with the Pennsylvania Oil and Gas Act, with respect to the well identified as Site # 36612 (hereinafter "**Well # 1**"), as follows:

    a.  Violation of 58 Pa.C.S. § 3252 ("Public Nuisances") - "Failure to comply with §§ 3217, 3218, 3219 or 3220 or a regulation, order, term or permit condition, constituting a public nuisance";

    b.  Violation of 58 Pa.C.S. § 3211(g) ("Well Permits – Posting") - "Failure to post the well permit number and the operator's name, address and phone number at the well site during construction of the access road, site preparation and during drilling, operating or alteration of well";

    c.  Violation of 58 Pa.C.S. § 3211(h) ("Well Permits – Labeling") - "Failure to install, in a permanent manner, the permit number on a completed well";

    d.  Violation of 58 Pa.C.S. § 3220(a) ("Plugging Requirements") - "Failure to plug the well upon abandoning it".

Ex. 2 at 1-3.

52.     The DEP noted that Well # 1 did not appear to have produced in several years, and the DEP considered Well # 1 to be abandoned.

53.     With respect to the well identified as Site # 36488 (hereinafter "Well # 2"), the DEP indicated the following violations:

    a.  Violation of 58 Pa.C.S. § 3252 ("Public Nuisances") - "Failure to comply with §§ 3217, 3218, 3219 or 3220 or a regulation, order, term or permit condition, constituting a public nuisance";

     b.   Violation of 58 Pa.C.S. § 3211(g) ("Well Permits – Posting") - "Failure to post the well permit number and the operator's name, address and phone number at the well site during construction of the access road, site preparation and during drilling, operating or alteration of well";

     c.   Violation of 58 Pa.C.S. § 3211(h) ("Well Permits – Labeling") - "Failure to install, in a permanent manner, the permit number on a completed well";

     d.   Violation of 58 Pa.C.S. § 3218.4(b) ("Corrosion Control Requirements – Other Structures") – "Failure to comply with corrosion control requirements for permanent tanks";

     e.   Violation of 58 Pa.C.S. § 3220(a) ("Plugging Requirements") - "Failure to plug the well upon abandoning it".

*Id.* at 7-9.

54.     The DEP returned for a follow up inspection on April 30, 2021.

55.     With respect to Well # 1, the DEP concluded two of the four violations were corrected, but again cited PPP for failure to plug the well upon abandonment and for failure to maintain the well and equipment.  *Id.* at 12-14.

56.     The DEP observed and photographed the discharge of "[s]oapy production fluid" from Well # 2.  *Id.* at 17, 21-22.

57.     DEP cited PPP with respect to Well No. 2 with violations of DEP regulations and violation of the Pennsylvania Storm Water Management Act as follows:

     a.   Violation of 25 Pa. Code § 78.57(a) ("Control, Storage and Disposal of Production Fluids") – "Operator failed to collect the brine and other fluids produced during operation, service and plugging of the well in a tank, pit or a series of pits or tanks, or other device approved by the Department or Operator discharged  brine or other fluids on or into the ground or into waters of the Commonwealth";

     b.   Violation of 35 P.S. § 6018.301 ("Management of Residual Waste") – "Person operated a residual waste processing or disposal facility without obtaining a permit for such facility from DEP.  Person stored, transported, processed, or disposed of residual waste inconsistent with or unauthorized by the rules and regulations of DEP";

  c. Violation of 35 P.S. § 6018.302(a) ("Disposal, Processing and Storage of Residual Waste") – "Person disposed, processed, stored, or permitted the disposal, processing or storage of residual waste in a manner which is contrary to the rules and regulations of DEP or to permit or to the terms or conditions of any permit or any order issued by DEP"; snf

  d. Violation of 35 P.S. § 6018.610(1) ("Unlawful Conduct") – "Person dumped or deposited, or permitted the dumping or depositing, of solid waste onto the surgace of the ground or underground into the waters of the Commonwealth, without a permit for the dumping of such solid wastes from DEP".

58. Bootes has observed the discharge of other wastewater materials from PPP's equipment on the Property, leaving standing pools of water with an oil-like sheen on the surface.

**D. Termination of the Lease and Post-Termination Obligations**

59. Due to PPP's material breaches of the Lease, on June 30, 2021, Bootes, through counsel, sent notice to PPP that Bootes was terminating the Lease. A copy of the June 30, 2021, letter is attached as **Exhibit 3**.

60. In the letter, Bootes notified PPP of the material breaches giving rise to the termination including PPP's failure to operate the wells in compliance with Pennsylvania law, PPP's failure to provide monthly statements of production and royalties, PPP's failure to provide Bootes with up to 200,000 cubic feet of gas from one well to supply his house with gas, and PPP's failure to provide the Cash Equivalent Payment for the second well.

61. Specifically Bootes notified PPP it was in default of its obligations under the Lease in the following manners:

  a. Failing to maintain the wells;

  b. Operating the wells with pipelines above ground;

  c. Failing to operate the wells in compliance with applicable laws;

  d. Causing damage to Bootes's Property by carelessly operating the wells;

  e. Failing to compensate Bootes for the damage PPP caused to Bootes's Property;

    f.   Entering onto Bootes's Property without notice;

    g.   Abandoning the work PPP started on the wells and did not finish;

    h.   Failing to restore the Property to its prior condition;

    i.   Interrupting and failing to restore the supply of gas to Bootes's house;

    j.   Failing to account for the wells' production;

    k.   Failing to pay any royalties to Bootes during his ownership of the Property; and

    l.   Failing to pay the Cash Equivalent Payment to Bootes when due or upon Bootes's demand.

*Id.* at 4.

62.    Accordingly, Bootes terminated the Lease and demanded PPP fulfill its outstanding obligations to Bootes, including:

    a.   Restore the wells to a safe and operable condition;

    b.   Remediate the contamination of the Property caused by the wells;

    c.   Restore the surface of Bootes's Property that PPP damaged in entering upon Bootes's Property;

    d.   Restore the supply of gas to Bootes's house;

    e.   Remit payment of the Cash Equivalent Payment to which Bootes is entitled to Bootes together with supporting data and calculations; and

    f.   Provide a full accounting of PPP's payment obligations under the Lease for the preceding five (5) years.

*Id.*

63.    On July 6, 2021, PPP, through its counsel, responded to the June 30, 2021 letter and rejected Bootes's termination of the Lease.

64.    Following the June 30, 2021 letter, PPP ultimately restored a supply of gas to Bootes's home from one of the wells as required under the Lease.

65. PPP, however, has failed to remit the Cash Equivalent Payment, failed to pay any royalties, failed to remediate the contamination on the Property, and failed to provide any accounting of it or its predecessor's payment obligations under the Lease for the preceding five years.

66. Upon information and belief, PPP currently owns, possesses, or utilizes various pipelines that traverse Bootes's Property without an easement or a right of way.

## COUNT I – DECLARATORY JUDGMENT

67. Plaintiff incorporates the preceding paragraphs as though set forth herein at length.

68. This claim is brought against PPP for declaratory relief with respect to Bootes's and PPP's rights and obligations under the Lease.

69. An actual and real controversy exists between the parties as to their respective rights and obligations under the Lease because Bootes terminated the Lease, and PPP refuses to recognize the termination.

70. Pursuant to the Declaratory Judgment Act, 28 U.S.C.A. §§ 2201–2202, Bootes respectfully requests that this Honorable Court declare the parties' rights relative to the Lease.

71. Pursuant to the Lease, the term of the Lease was one (1) year "and so long as thereafter the above described land, or any portion thereof, is operated by the Lessee in the search for or production of oil or gas, or as long as this lease is extended by any other provisions contained herein." Ex. 1 at ¶ 3.

72. Pursuant to the Lease, when the Lessee determines that its operation of the wells under the Lease "is no longer commercially feasible, Lessor shall have the option of purchasing the well and pipeline for the sum of One ($1.00) Dollar, or having [Lessor] plug the well[s]." Ex. 1 at ¶ 13.

73.     Pursuant to the Lease, "if Lessee, pursuant to Paragraph 13 herein, turns over the casing, pipes, pipelines and valves shall be the property of Lessors."  Ex. 1 at ¶ 22.

74.     Pursuant to the Lease, "At the abandonment of any well or termination of this lease, all casings shall remain in the well and become the property of Lessor."  Ex. 1 at ¶ 8.

75.     PPP has abandoned its search for and production of gas under the Lease.

76.     DEP declared the wells on Property abandoned as of September 2020.  *See* Ex. 2.

77.     PPP's failure to properly maintain the equipment, failure to comply with Pennsylvania law, failure to pay royalties, failure to supply up to 200,000 cubic feet of gas per year, and failure to make the Cash Equivalent Payment all constitute material breaches of the Lease, justifying Bootes's termination of the Lease.

78.     Bootes respectfully requests that this Honorable Court declare that:

    a.   PPP has abandoned its search for and production of gas under the Lease;

    b.   The Lease is terminated;

    c.   PPP has no further right to access, enter upon, or traverse under, through, over, and/or across the Property; and

    d.   All equipment on and beneath the Property including the wells, pipelines, and storage tanks, are the property of Bootes.

WHEREFORE, Plaintiff Cody Bootes respectfully requests that this Honorable Court declare that:

    a.   PPP has abandoned its search for and production of gas under the Lease;

    b.   The Lease is terminated;

    c.   PPP has no further right to access, enter upon, or traverse under, through, over, and/or across the Property; and

    d.   All equipment on and beneath the Property including the wells, pipelines, and storage tanks, are the property of Bootes.

## COUNT II – BREACH OF CONTRACT
## (SPECIFIC PERFORMANCE)

79.     Plaintiff incorporates the preceding paragraphs as though set forth herein at length.

80.     Pursuant to the Lease, PPP agreed to conduct its operations under the Lease "with reasonable diligence, continuously, in good faith, with first class equipment and appliances, and in accordance with the best customary practices in the field."  Ex. 1 at ¶ 15.

81.     Pursuant to the Lease, PPP agreed to prevent its operations under the Lease from:

> (a) causing or contributing to soil erosion or to the injury of terraces or other soil conserving structures on the premises; (b) polluting the waters of reservoirs, springs, streams or wells upon the leased premises; (c) damaging crops, timber or pastures, consistent with the purpose of this lease;

Ex. 1 at ¶ 8.

82.     PPP failed to maintain its equipment.

83.     As a result of PPP's failure to maintain its equipment, the equipment has deteriorated and began to leak and cause damage to Bootes's Property.

84.     Pursuant to the Lease, PPP agreed to ensure that all pipelines are buried below plow depth.

85.     PPP failed to ensure that all pipelines were buried below plow depth.

86.     As a result, PPP damaged a certain exposed line by driving over the line with a piece of equipment and thereby caused the line to leak and cause damage to Bootes's Property.

87.     Pursuant to the Lease, PPP agreed to clean up and restore any damage to Bootes's Property caused by its operations.

88.     PPP's failure to remediate the contamination of the Property caused by its operations constitutes a breach of the Lease.

89.     PPP's failure to restore the damage that PPP caused to the surface of Bootes's Property constitutes a breach of the Lease.

90.     Money damages would be inadequate because as long as the Lease is in force, Bootes cannot undertake to repair PPP's equipment himself.

91.     Money damages would also be inadequate because it is economically unfeasible for Bootes to pay for the remediation of the wastewater contamination and the restoration of the surface of the Property.

WHEREFORE, Plaintiff Cody Bootes respectfully requests that this Honorable Court enter judgment in favor of Plaintiff Cody Bootes and against Defendant PPP Future Development, Inc. and direct that PPP specifically perform its following obligations under the Lease:

    a.  repair its equipment to good and operable condition;

    b.  remediate the wastewater contamination of Bootes's Property; and,

    c.  restore Bootes's Property.

## COUNT III – BREACH OF CONTRACT
## (DAMAGES)

92.     Plaintiff hereby incorporates the preceding paragraphs as if set forth at length herein.

93.     As more fully set forth above, PPP breached the Lease by:

    a.  failing to pay any royalties to Bootes;

    b.  failing to furnish to Bootes any monthly written statements of the production of gas on the Property;

    c.  failing to keep records of the production of gas for the Property;

    d.  failing to open its records of the production of gas for the Property to Bootes for inspection;

e.  failing to provide Bootes with a supply of two hundred thousand (200,000) cubic feet of gas per year from one (1) of the two (2) wells on the Property during the winter of 2020-2021;

f.  failing to provide Bootes with the Cash Equivalent Payment for the second well on the Property;

g.  failing to maintain its equipment such that the equipment has deteriorated and began to leak and cause damage to Bootes's Property;

h.  failing to restore the surface of Bootes's Property from the work it performed, but did not complete, in June 2021; and,

i.  failing to comply with all governmental laws, orders, rules and regulations applicable to its operations under the Lease.

94.    As a result of PPP's breaches of the Lease, Bootes has suffered and/or will suffer the following damages:

a.  contamination of Bootes's Property;

b.  substantial expenses, including consultants' fees and attorney's fees and costs, associated with characterizing and evaluating the nature and extent of the contamination at and beneath the Property;

c.  substantial expense in remediating the contamination at and beneath the Property, including but not limited to administrative costs and consultants' and attorney's fees;

d.  anticipated costs of repairing PPP's equipment such that the equipment does violate applicable laws and/or create a hazardous condition;

e.  damage to the surface of Bootes's property;

f.  anticipated costs associated with repairing the damage to Bootes's Property;

g.  loss of the full use and enjoyment of the Property, and other interference with Bootes's right of private occupancy;

h.  diminishment of the value and marketability of the Property as a result of the contamination;

i.  potential requirement to defend future actions and administrative proceedings arising directly and indirectly from the contamination of the Property; and,

- 15 -

j.    the cost of an alternative source of heat for Bootes's home.

95.    Bootes is entitled to payment of the royalties and the Cash Equivalent Payment.

WHEREFORE, Plaintiff Cody Bootes respectfully requests that this Honorable Court enter judgment in favor of Plaintiff Cody Bootes and against Defendant PPP Future Development, Inc. in an amount in excess of the limits for diversity jurisdiction plus interest, costs, and such other relief as this Honorable Court deems fair and just.

## COUNT IV – TRESPASS

96.    Plaintiff incorporates the preceding paragraphs as though set forth herein at length.

97.    As more fully set forth above, due to PPP's failure to operate the wells in the search for or production of gas, the Lease is terminated.

98.    Outside of the Lease, PPP does not have a right to access, enter upon, operate the wells, or transport gas under, through, over, and/or across the Property.

99.    Upon information and belief, PPP is nevertheless transporting gas under, through, over, and across the Property.

100.    PPP's transportation of gas under, through, over, and/or across the Property without the right to do so constitutes a trespass upon Bootes's Property.

WHEREFORE, Plaintiff Cody Bootes respectfully requests that this Honorable Court enter judgment in favor of Plaintiff and against Defendant in an amount in excess of the limits for diversity jurisdiction, plus interest, costs, and such other relief as this Honorable Court deems fair and just.

## COUNT V – PUBLIC NUISANCE

101.    Plaintiff incorporates the preceding paragraphs as though set forth herein at length.

102.    Pursuant to the Oil and Gas Act, 58 Pa.C.S. §§ 3201–3274,

> A violation of section 3217 (relating to protection of fresh groundwater and casing requirements), 3218 (relating to protection of water supplies), 3219 (relating to use of safety devices) or 3220 (relating to plugging requirements), or a regulation, order, term or condition of a permit relating to any of those sections constitutes a public nuisance.

58 Pa.C.S. § 3252.

103.    As set forth in the DEP Inspection Reports for the wells, PPP failed to comply with Sections 3217, 3218, 3219, and 3220.  *See* Ex. 2.

104.    Pursuant to the Oil and Gas Act, PPP's violations of the Oil and Gas Act constitute a public nuisance.

105.    Pursuant to the Solid Waste Management Act, 35 P.S. §§ 6018.101–6018.1003,

> Any violation of any provision of this act, any rule or regulation of the department, any order of the department, or any term or condition of any permit, shall constitute a public nuisance. Any person or municipality committing such a violation shall be liable for the costs of abatement of any pollution and any public nuisance caused by such violation. The Environmental Hearing Board and any court of competent jurisdiction is hereby given jurisdiction over actions to recover the costs of such abatement.

35 P.S. § 6018.601.

106.    As set forth in the DEP Inspection reports, PPP violated the following provisions of the Solid Waste Management Act:

a.   35 P.S. § 6018.301 (Management of residual waste);

b.   35 P.S. § 6018.302(a) (Disposal, processing and storage of residual waste); and,

c.   35 P.S. § 6018.610 (Unlawful conduct).

107.    Pursuant to the Solid Waste Management Act, PPP's violations of the Solid Waste Management Act constitute a public nuisance.

108.    The DEP issued the regulation regarding control, storage and disposal of production fluids, 25 Pa. Code § 78.57, pursuant to both the Oil and Gas Act and the Solid Waste Management Act.

109.    As set forth in the April 30, 2021 DEP Inspection Report for Well # 2, PPP violated 25 Pa. Code § 78.57 by "fail[ing] to collect the brine and other fluids produced during operation, service and plugging of the well in a tank, pit or a series of pits or tanks, or other device approved by the Department or [PPP] discharged brine or other fluids on or into the ground or into waters of the Commonwealth." *See* Ex. 2 at 19.

110.    Pursuant to the Oil and Gas Act and Solid Waste Management Act, PPP's violation of 25 Pa. Code § 78.57 constitutes a public nuisance.

111.    Bootes has suffered and continues to suffer special damage as PPP's violations of the Oil and Gas Act and Solid Waste Management Act have caused gas, wastewater, and/or other byproducts of production to leak onto Bootes's Property and contaminate the Property.

112.    The damage that PPP's violations have caused to Bootes is different in kind and degree from that suffered from the nuisance by the general public because PPP's violations have specifically caused contamination to Bootes's Property.

WHEREFORE, Plaintiff Cody Bootes respectfully requests that this Honorable Court enter judgment in favor of Plaintiff Cody Bootes and against Defendant PPP Future Development, Inc. in an amount in excess of the limits for diversity jurisdiction, plus interest, costs, and such other relief as this Honorable Court deems fair and just.

## COUNT VI – PRIVATE NUISANCE

113.    Plaintiff incorporates the preceding paragraphs as if set forth at length herein.

114.    PPP has failed to maintain its equipment, causing wastewater to leak onto Bootes's Property.

115.    PPP's actions were unreasonable in permitting the wastewater to leak onto and contaminate Bootes's Property.

116.    PPP's actions have caused significant harm to Bootes, as his Property continues to experience wastewater discharge and contamination.

117.    PPP's actions and/or failure to act has caused real and appreciable interference with Bootes's use or enjoyment of his Property.

WHEREFORE, Plaintiff Cody Bootes respectfully requests that this Honorable Court enter judgment in favor of Plaintiff Cody Bootes and against Defendant PPP Future Development, Inc., in amount in excess of the limits for diversity jurisdiction, plus interest, costs, and such other relief as this Honorable Court deems fair and just.

## COUNT VII- NEGLIGENCE PER SE

118.    Plaintiff incorporates the preceding paragraphs as if set forth at length herein.

119.    In Pennsylvania, the Oil and Gas Act exists to "[p]rotect the safety and property rights of persons residing in areas where mining, exploration, development, storage or production occurs."  58 Pa. C.S. § 3202(3).

120.    By virtue of PPP's wells on the Property, Bootes resides in an area where mining, exploration, development, storage or production occurs.

121.    PPP leases two natural gas wells on Bootes's Property, and they engage in oil and gas drilling and exploration activities in the Commonwealth of Pennsylvania.  *See* Ex. 2.

122.    The Oil and Gas Act applies to PPP's activities on Bootes's Property.

123.    As set forth above, the DEP found that PPP violated the Oil and Gas Act in numerous manners related to the Property, including sections 3220(A), 3252, 3211(H), 3211(G), and 3218.2(B) of the Act.  *See* Ex. 2.

124.    Bootes has been injured by PPP's violations of the Oil and Gas Act as set forth at length above.

125.    Additionally, as set forth above, PPP's failure to maintain its wells and equipment has caused damage to Bootes's property by leaking brine and/or byproducts of production onto Bootes's Property in violation of the Oil and Gas Act, 58 Pa.C.S. § 3217.

126.    PPP's failure to restore the Property to its prior condition after its work constitutes a violation of 58 Pa.C.S. § 3216.

127.    One of the purposes of the Solid Waste Management Act is to "protect the public health, safety and welfare from the short and long term dangers of transportation, processing, treatment, storage, and disposal of all wastes." 35 P.S. § 6018.102.

128.    To achieve this purpose, sections 301, 302, and 610 of the Solid Waste Management Act impose duties on persons within the Commonwealth with respect to the management, disposal, processing and storage of residual waste as defined in the Act.

129.    As set forth above, the DEP found that PPP violated sections 301, 302, and 610 of the Solid Waste Management Act.

130.    PPP's violations of these statutes, where were designed to protect the citizens of the Commonwealth from the dangers of improper disposal of hazardous waste, caused injury to Bootes in the form of contamination of Bootes's Property.

WHEREFORE, Plaintiff Cody Bootes respectfully requests that this Honorable Court enter judgment in favor of Plaintiff Cody Bootes and against Defendant PPP Future Development, Inc. in an amount in excess of the limits for diversity jurisdiction, plus interest, costs, and such other relief as this Honorable Court deems fair and just.

Dated: May 14, 2022                    Respectfully Submitted,

                                                  CREENAN & BACZKOWSKI, PC

                                                  BY:     */s/ James W. Creenan*
                                                          James W. Creenan, Esquire
                                                          Pa. Id. No. 79213
                                                          Ian C. Walchesky, Esquire
                                                          Pa. Id. No. 200222
                                                          Joanne L. Parise, Esquire
                                                          Pa. Id. No. 328877

                                                          Town Square Professional Building
                                                          3907 Old William Penn Highway
                                                          Suite 304
                                                          Murrysville, PA 15668
                                                          (724) 733-8832
                                                          (724) 733-8834 (facsimile)
                                                          jcreenan@cbattorneys.com
                                                          iwalchesky@cbattorneys.com
                                                          jparise@cbattorneys.com